UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE DECAMP, as Guardian
of the Property of
Timothy Decamp, Jr. and
assignee of Jasmina Woltcheck,
and CONSTANCE DECAMP,
as Guardian of the Person
of Timothy Decamp, Jr.
and assignee of Jasmina Woltcheck,

    Plaintiffs,

v.                                    Case No. 8:20-cv-1747-VMC-TGW

STATE FARM FIRE & CASUALTY
COMPANY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiffs Christine and Constance Decamp's Daubert Motion to Exclude the Opinions of Kelly Gray, Esq. (Doc. # 46), filed on August 9, 2021. Defendant State Farm Fire & Casualty Company responded on August 23, 2021. (Doc # 52). For the reasons that follow, the Motion is granted in part and denied in part.

**I.  Background**

In this action, the Decamps, as Guardians for Timothy Decamp, Jr., assert claims for common law bad faith, statutory

1

bad faith, and unfair claim settlement practices against State Farm. (Doc. # 1). The parties and the Court are familiar with the facts of this case, as well as the underlying litigation between the Decamps and State Farm's insured, Jasmina Woltcheck. Thus, the Court need not reiterate those facts here.

This case has proceeded through discovery and State Farm has moved for summary judgment. (Doc. # 45). In support of its case, State Farm utilizes the opinions of Kelly Gray, Esq. Gray is an attorney "licensed to practice law in the State of Florida since 1993." (Doc. # 46-1 at 66). "During the past nearly twenty-eight years, [she has] focused [her] practice on insurance coverage and extracontractual matters, both as a litigation attorney and as a corporate claims attorney. In addition, [she has] several years of experience litigating various types of personal injury matters, including catastrophic automobile accidents, construction defect litigation, and professional liability." (Id.).

In her report, Gray opines that, "under the totality of the circumstances, State Farm has met its fiduciary obligations and complied with applicable industry standards relative to the claims of Timothy DeCamp against Jasmina Woltcheck." (Id. at 80). Among other things, Gray concludes

2

that "the State Farm policy clearly and unambiguously did not obligate State Farm to pay for the Guardianship or the Special Needs Trust." (Id. at 83). Furthermore, regarding the Decamps' demand that State Farm pay for the legal and other fees associated with the establishment of a guardianship and special needs trust for Timothy Decamp, Gray states:

> The industry standard is not now, nor has it ever been, that a carrier must make extra contractual payments over and above its purchased policy limits to effectuate a settlement in order to be in good faith. Such a standard would make a mockery of the concepts of good and bad faith. Extra contractual payment is due, by definition, when a carrier has failed to act in good faith or, put another way, has already acted in bad faith. They are payments over and above the policy limits BECAUSE the carrier failed to settle the claim at or within the policy limits when it could and should have done so. Thus, there must have first been an opportunity to settle the claim at or within the policy limits which the carrier failed to effectuate. There was clearly never any such opportunity here. The file materials establish that Attorney Leeper only ever offered to accept the proactively tendered policy limits if State Farm would also agree to pay extra contractual amounts. Attorney Leeper and Christine and Constance DeCamp have all testified that they were never willing to accept the $50,000 policy limits without more.

(Id. at 84). While Gray acknowledges that some insurance companies have paid above the policy limits to establish guardianship to effectuate a settlement, she maintains that these past incidents do not "establish[] an industry standard requiring a carrier to pay above and beyond its coverages to

settle claims against its insured where the carrier's claim handling demonstrates good faith." (Id.).

Now, the Decamps seek to exclude Gray's testimony. (Doc. # 46). State Farm has responded (Doc. # 52), and the Motion is ripe for review.

## II.   **Discussion**

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that

4

accompanies the appellation 'expert testimony.'" <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" <u>Hendrix v. Evenflo Co.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Id.</u> The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. <u>Id.</u>

### 1.   <u>Qualifications</u>

The first question under <u>Daubert</u> is whether the proposed expert witness, Ms. Gray, is qualified to testify competently regarding the matters she intends to address. <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials

5

of the proposed expert in light of the subject matter of the proposed testimony.'" <u>Clena Invs., Inc. v. XL Specialty Ins. Co.</u>, 280 F.R.D. 653, 661 (S.D. Fla. 2012)(quoting <u>Jack v. Glaxo Wellcome, Inc.</u>, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." <u>Id.</u> (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under <u>Daubert</u> 'is not intended to supplant the adversary system or the role of the jury.'" <u>Maiz v. Virani</u>, 253 F.3d 641, 666 (11th Cir. 2001)(quoting <u>Allison v. McGhan</u>, 184 F.3d 1300, 1311 (11th Cir. 1999)).

As the Decamps failed to arrange their Motion based on the three <u>Daubert</u> requirements, it is difficult to determine at times to which requirement their arguments are directed. Regarding qualifications, the Decamps argue Gray should not be permitted to testify because she "has not gained any expertise concerning 'friendly suits' and/or an insurer's payment of guardianship and/or estate proceedings for a claimant in order to effectuate a settlement . . . through

'knowledge, skill, experience, training or education.'" (Doc. # 46 at 11).

The Court rejects the Decamps' arguments regarding Gray's qualifications. Gray has twenty-eight years of experience as an attorney dealing with insurance litigation — four years of which were spent as the Director of Claim Legal for Travelers of Florida and eight years as the Director of Claim Legal for Direct General Insurance Company. (Doc. # 46-1 at 66-67). As a Director of Claim Legal, Gray "managed extra-contractual claims and litigation" and "was also responsible for the management of the company's Major Case Unit, which handled the most complex and high exposure property and casualty claims; the preparation of claim handling guidelines; and the preparation and presentation of training on claim handling and coverage issues." (Id. at 67). She has also "train[ed] claim professionals in the good faith handling of insurance claims." (Id.).

This experience renders her at least minimally qualified to give opinions in this insurance bad faith case. The Motion is denied as to qualifications.

2.   **Reliability**

The next question is whether Ms. Gray's methodology is reliable. "Exactly *how* reliability is evaluated may vary from

case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)(citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016)(citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology,

8

not on the conclusions that they generate.'" <u>Seamon</u>, 813 F.3d at 988 (citation omitted).

The Decamps argue that Gray's opinions are unreliable. According to them, Gray "may be reliable on other Florida bad faith matters, but she is not reliable as an expert in this lawsuit on the custom and industry practices concerning Florida insurers including State Farm paying or contributing towards 'friendly suits' or otherwise paying for or contributing towards guardianship or estate proceedings for minor, incapacitated adult or wrongful death claimants." (Doc. # 46 at 13). They emphasize that Gray has not handled any insurance claims or "any personal injury cases involving where an insurer paid or contributed towards guardianship or estate proceedings for a claimant when she was employed at private law firms as a plaintiff or defense attorney." (<u>Id.</u> at 11-12). The Decamps also take issue with Gray's not reviewing certain prior instances in which State Farm did pay for guardianships. (<u>Id.</u> at 12).

The Court disagrees with the Decamps, especially as the Decamps focus on Gray's conclusions rather than her method of reaching those conclusions. Gray's testimony is sufficiently reliable regarding industry standards for paying above and beyond the policy limits to establish guardianships. <u>See</u>

Trinidad v. Moore, No. 2:15-cv-323-WHA, 2017 WL 490350, at *2
(M.D. Ala. Feb. 6, 2017)("Dillard's opinions in his
supplemental report, like his opinions in his earlier report,
are sufficiently reliable because they are based upon his
personal knowledge and experience."). And Gray has reviewed
the record in this case in order to reach her conclusions.
(Doc. # 46-1 at 67-68); see also Dudash v. S.-Owners Ins.
Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *3 (M.D.
Fla. May 12, 2017)(denying a Daubert motion to exclude Ms.
Gray and stating that, as "[h]er opinions were formulated
based on her review of the record," the "argument that her
review is unreliable is unpersuasive").

Any alleged flaws in Gray's methodology should be
addressed in cross-examination. See Maiz, 253 F.3d at 666
("Vigorous cross-examination, presentation of contrary
evidence, and careful instruction on the burden of proof are
the traditional and appropriate means of attacking
[debatable] but admissible evidence." (citations and internal
quotation marks omitted)).

Additionally, the Decamps maintain that Gray is
unreliable because she "merely parrot[s] State Farm and its
counsel's legal position, with nothing more to add." (Doc. #
46 at 14). The Court again disagrees. As State Farm chose her

as its expert, it is no surprise that Gray's opinions are in State Farm's favor and it does not suggest that Gray's opinions are unreliable. Furthermore, Gray's report provides legitimate expert opinions in this case, regarding what insurance industry standards involve and whether State Farm complied with those standards.

In short, Gray's opinions, which are derived from her long and relevant experience in the insurance and legal industries, are reliable.

### 3.   Assistance to Trier of Fact

Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." <u>Frazier</u>, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" <u>Allison</u>, 184 F.3d at 1312 (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' <u>Daubert</u>, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because

there is no 'fit.'" <u>Boca Raton Cmty. Hosp., Inc. v. Tenet
Health Care Corp.</u>, 582 F.3d 1227, 1232 (11th Cir.
2009)(citations omitted). "Proffered expert testimony
generally will not help the trier of fact when it offers
nothing more than what lawyers for the parties can argue in
closing arguments." <u>Frazier</u>, 387 F.3d at 1262-63 (citation
omitted).

The Decamps argue that Gray's opinion that payment of
the guardianship and special needs trust fees was not required
by the terms of the insurance policy is an unhelpful and
inadmissible legal conclusion that "usurp[s] this Court's
authority to construe the insurance contract." (Doc. # 46 at
8). "No witness may offer legal conclusions or testify to the
legal implications of conduct." <u>Dudash</u>, 2017 WL 1969671, at
*2.

The Court agrees that Gray may not opine as to whether
payment of guardianship and special needs trust fees was
required under the terms of the insurance policy. Nor may she
provide other legal conclusions, such as what legal duties
existed for State Farm. In recognition of the prohibition on
legal conclusions, State Farm concedes that it is not asking
Gray to offer "expert opinions concerning the interpretation
of the insurance policy, the legal duties owed by an insurer,

or the mental state or credibility of any witness." (Doc. # 52 at 2).

Having determined that Gray may not offer such legal conclusions, the Court clarifies that not all of Gray's opinions should be excluded. Gray's testimony will be helpful to the jury regarding the standards and practices of the insurance industry and whether State Farm complied with such standards. See Pacinelli v. Carnival Corp., No. 18-22731-Civ-WILLIAMS/TORRES, 2019 WL 3252133, at *6 (S.D. Fla. July 19, 2019)(finding expert testimony on certain industry standards helpful as they were "beyond the common knowledge of the average [layperson]"); see also Maharaj v. GEICO Cas. Co., No. 12-80582-CIV, 2015 WL 11279830, at *6 (S.D. Fla. Mar. 12, 2015)("The Court finds that opinion testimony from a qualified witness as to the claims handling standards within the insurance industry, and whether or not Defendant's actions met those standards, will help the jury understand the evidence and determine a fact in issue. The jury does not, however, need any assistance in applying the law to this testimony and making a factual determination as to whether or not GEICO acted in 'bad faith.'"). This is the case even regarding Gray's opinion that State Farm exceeded industry

standards in certain respects. (Doc. # 46-1 at 81-82, 85).
Thus, Gray may testify as to those matters.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs Christine and Constance Decamp's <u>Daubert</u>
Motion to Exclude the Opinions of Kelly Gray, Esq. (Doc. #
46) is **GRANTED in part and DENIED in part.** The Motion is
granted to the extent Ms. Gray may not offer legal conclusions
or testify to the legal implications of conduct. The Motion
is denied in all other respects.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u>
day of September, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE