UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE DECAMP, as Guardian
of the Property of
Timothy Decamp, Jr. and
assignee of Jasmina Woltcheck,
and CONSTANCE DECAMP,
as Guardian of the Person
of Timothy Decamp, Jr.
and assignee of Jasmina Woltcheck,

    Plaintiffs,

v.   Case No. 8:20-cv-1747-VMC-TGW

STATE FARM FIRE & CASUALTY
COMPANY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant State Farm Fire & Casualty Company's Daubert Motion to Exclude the Testimony of Daniel Doucette (Doc. # 47), filed on August 9, 2021. Plaintiffs Christine and Constance Decamp, as Guardians of Timothy Decamp, responded on August 30, 2021. (Doc # 54). For the reasons that follow, the Motion is denied.

**I.   Background**

In this action, the Decamps, as Guardians for Timothy Decamp, Jr., assert claims for common law bad faith, statutory bad faith, and unfair claim settlement practices against

1

State Farm. (Doc. # 1). The parties and the Court are familiar with the facts of this case, as well as the underlying litigation between the Decamps and State Farm's insured, Jasmina Woltcheck. Thus, the Court need not reiterate those facts here.

This case has proceeded through discovery and State Farm has moved for summary judgment. (Doc. # 45). In support of their position, the Decamps rely on the expert opinions of Daniel Doucette, Esq. Doucette is an attorney with "more than 25 years of experience in the insurance industry consisting of time as an insurance adjuster, a claim manager, a litigation supervisor, vice president of claims/legal, COO, CEO and ultimately chairman of a diverse insurance group writing multiple lines of insurance coverage in numerous states including the State of Florida." (Doc. # 47-1 at 2). He has also "spent approximately 15 years as an active trial lawyer handling primarily insurance related matters." (Id.).

In his report, Doucette opines: "Despite multiple opportunities to resolve this matter and protect its insured from a significant excess judgment, State Farm failed to do so contrary to the custom and practice in the industry." (Id. at 5). "Even if we assume there was no way to reduce the cost of the guardianship below $15,000, we have a situation where

2

the company could have settled a multi-million dollar claim for a total payment of $65,000. There is no sane person faced with that opportunity who would not have immediately accepted the settlement demand." (Id. at 8). "[I]n refusing to pay or contribute to the expense of the guardianship to resolve this catastrophic claim, State Farm was not acting consistent with the custom and practice in the industry." (Id. at 9). Regarding State Farm's position that payment of the guardianship and special needs trust fees was not required under the terms of the insurance policy, Doucette asserts that "[i]t is irrelevant that the policy does not promise to pay for guardianship costs" because insurance companies frequently pay "routine loss expenses" that they are not required to pay under the terms of a policy. (Id.).

Now, State Farm seek to exclude Doucette's testimony. (Doc. # 47). The Decamps have responded (Doc. # 54), and the Motion is ripe for review.

**II. Discussion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is

3

>based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

>(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or

4

>     specialized expertise, to understand the evidence
>     or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

State Farm does not challenge Doucette's qualifications. But it does challenge his methodology and the assistance of his opinions to the trier of fact. (Doc. # 47 at 9, 13).

1.  **Reliability**

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)(citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

>     (1) whether the expert's methodology has been
>     tested or is capable of being tested; (2) whether
>     the technique has been subjected to peer review and
>     publication; (3) the known and potential error rate
>     of the methodology; and (4) whether the technique
>     has been generally accepted in the proper
>     scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016)(citations omitted). A district court can take other

5

relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

According to State Farm, "Doucette's opinion is inherently unreliable because it is not based on any authority, independent research, or experience. Instead, he bases his opinion on the testimony of witnesses in this case and on his limited personal observations concerning the subject matter." (Doc. # 47 at 10). State Farm emphasizes that Doucette has not performed or read a survey regarding how common the payment of guardianship costs is, or "point[ed] to a statute or regulation requiring insurers to pay these amounts, or at least point[ed] to a treatise or article or something." (Id.). In short, State Farm takes issue with the

fact that Doucette's "opinions are based entirely on deposition testimony from this case." (Id.).

The Court disagrees. Doucette may rely on his experience in the insurance industry to support his methodology. See Trinidad v. Moore, No. 2:15-cv-323-WHA, 2017 WL 490350, at *2 (M.D. Ala. Feb. 6, 2017)("Dillard's opinions in his supplemental report, like his opinions in his earlier report, are sufficiently reliable because they are based upon his personal knowledge and experience."). Indeed, Doucette has personally encountered instances of his employer, GEICO, paying for a guardianship or court approval of a settlement. While Doucette testified that he only saw this happen in a "handful" of cases, he testified that he had not "seen a case where GEICO refused to do it." (Doucette Dep. Doc. # 44-6 at 44:24-45:24). This reliance on his experience qualifies as a sufficiently reliable methodology. See Iaffaldano v. Sunwest Mortg. Co., Inc., No. 2:17-cv-14222, 2018 WL 310050, at *2 (S.D. Fla. Jan. 4, 2018)("[The expert] has substantial experience in the insurance industry, . . . which Plaintiff acknowledges []. His opinions, thus, are reliable based upon his knowledge and experience. He need not have used a particular methodology in arriving at his conclusions.").

The alleged flaws in Doucette's methodology highlighted by State Farm should be addressed in cross-examination. See Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001)("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)).

### 2. Assistance to Trier of Fact

Expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999)(citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir.

8

2009)(citations omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

State Farm argues: "Doucette's opinion that State Farm 'could' and 'should' have settled Plaintiffs' claim by paying Plaintiffs' legal expenses can be taken one of two ways, neither of which is helpful to the trier of fact." (Doc. # 47 at 13). "First, it could be taken as testimony as to the existence of a legal duty to pay for Plaintiffs' legal fees. Alternatively, it could be simply taken as testimony as to what other insurers have done in similar situations." (Id.).

Regarding the legal duty argument, State Farm contends that "[t]he Court (not expert witnesses) must be the jury's sole source of law, and it is not helpful for them to hear either duplicative or conflicting testimony of expert witnesses as to the same issue." (Id. at 14). True, "[n]o witness may offer legal conclusions or testify to the legal implications of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017). However, Doucette states in his report that his opinions "are not intended to be legal opinions" and "to the

9

extent [he has] referenced [legal principles, laws, and cases], it is in [his] capacity as insurance expert not as a legal expert." (Doc. # 47-1 at 2). And, upon review, the Court disagrees with State Farm that Doucette's opinions are merely disguised legal conclusions. Thus, the Court will not exclude Doucette's testimony on this basis. Still, the Court cautions Doucette that he may not offer any legal conclusions at trial, and the Court will entertain specific objections if Doucette's testimony crosses this line during trial.

The Court also rejects State Farm's argument that "the subject matter is not so specialized as to call for expert testimony" and "Doucette's opinion is not helpful to the jury in deciding whether State Farm acted in bad faith." (Doc. # 47 at 17). Doucette may offer opinions on the customs and practices of the insurance industry and whether State Farm complied with those practices, as this will aid the jury. See Harrison v. State Farm Fire & Cas. Co., No. 2:12-cv-205-SPC-UAM, 2013 WL 12158377, at *2 (M.D. Fla. Dec. 11, 2013)("[The expert] can testify as to disclosure of insurance information and why reliable insurance information is important, define insurance terminology, and talk about customs and practices in the insurance industry."); see also Maharaj v. GEICO Cas. Co., No. 12-80582-CIV, 2015 WL 11279830, at *6 (S.D. Fla.

10

Mar. 12, 2015)("The Court finds that opinion testimony from a qualified witness as to the claims handling standards within the insurance industry, and whether or not Defendant's actions met those standards, will help the jury understand the evidence and determine a fact in issue. The jury does not, however, need any assistance in applying the law to this testimony and making a factual determination as to whether or not GEICO acted in 'bad faith.'"). Such opinions are beyond the common knowledge of jurors. See Pacinelli v. Carnival Corp., No. 18-22731-Civ-WILLIAMS/TORRES, 2019 WL 3252133, at *6 (S.D. Fla. July 19, 2019)(finding expert testimony on certain industry standards helpful as they were "beyond the common knowledge of the average [layperson]").

State Farm's Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant State Farm Fire & Casualty Company's Daubert Motion to Exclude the Testimony of Daniel Doucette (Doc. # 47) is **DENIED**. With the caveat that Mr. Doucette may not offer legal opinions or conclusions, the Court declines to exclude Mr. Doucette as an expert.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of September, 2021.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE